IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

SHAKIRA CRAWLEY,
o/b/o Z.B.D.
                          Plaintiff,          13-CV-6242T

              -v-                             DECISION AND
                                              ORDER

CAROLYN W. COLVIN, Acting
Commissioner OF Social Security,

                  Defendant.
_____


        Shakira Crawley brings this action under Title II of the
Social Security Act ("the Act") on behalf of her son, Z.B.D.
(hereinafter designated "plaintiff"), claiming that the
Commissioner of Social Security ("Commissioner" or "defendant")
improperly denied his application for children's supplemental
security income benefits ("SSI").

        Currently before the Court are the parties' competing motions
for judgment on the pleadings pursuant to Rule 12(c) of the Federal
Rules of Civil Procedure.   For the reasons set forth below,
plaintiff's motion is denied and, defendant's motion is granted.

                        **PROCEDURAL HISTORY**

        On November 22, 2010, plaintiff filed an application for SSI
alleging disability as of November 1, 2010 due to attention
deficient hyperactivity disorder ("ADHD").   Administrative
Transcript ("T.") 136.   Following a denial of that application,
plaintiff testified at a hearing held at his request on March 19,

2012 before administrative law judge ("ALJ") Richard E. Guida. T. 36-63, 73-74. Testimony was taken from plaintiff and his mother, Shakira Crawley ("Ms. Crawley"). T. 36-63.

The ALJ, in his review of the evidence, applied the three-step required analysis set forth in the Social Security Administration's regulations (*see* 20 C.F.R. § 416.924) and made the following findings: (1) plaintiff was a school-aged child on November 22, 2010; (2) he had not engaged in substantial gainful activity since November 22, 2010, the date of the onset of his alleged disability; (3) his ADHD was a severe impairment; (4) his impairment did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart 9, Appendix 1; (5) his impairment did not functionally equal the severity of any impairments listed in 20 CFR 416.924(d) and 416.926(a); and (6) plaintiff had not been disabled as defined by the Act since November 22, 2010. T. 18-32.

With respect to finding number four, the ALJ found that plaintiff's impairment did not meet the criteria in listing 112.11 for ADHD, which requires medically-documented findings of marked inattention, marked impulsiveness and marked hyperactivity. T. 21. The ALJ found that since receiving medical treatment for his ADHD, the level of plaintiff's hyperactivity and impulsiveness were to a degree less what is found to be marked. T. 21.

With respect to finding number five, the ALJ, after considering the testimony, teacher reports, mental status

examination reports, and medical opinion evidence, found that, as result of his impairment, plaintiff has (1) less than marked limitation in acquiring and using information, (2) marked limitation in attending and completing tasks, (3) less than marked limitation in moving about and manipulating objects, (4) less than marked limitation in the ability to care for himself, and (5) no limitation in health and physical well-being. T. 27-32.

The Appeals Council denied plaintiff's request for review of the ALJ's decision. T. 1.  This action followed.

## DISCUSSION

## I.    General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007).  The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence

from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).

## II.  Educational and Medical Evidence

In 2010, a certified psychologist from the Rochester City School District recommended that plaintiff be assessed for ADHD due to his "clinically significant high levels" of cognitive or inattention problems, hyperactivity, and behaviors associated with ADHD. T. 156.  All of plaintiff's classroom progress reports, individualized education program ("IEP") reports, occupational therapy reports, speech-language evaluations, and psychological assessments from that period reveal the same struggles to make academic progress and develop appropriate coping strategies. T. 158-170, 174-177, 187-188, 190-196, 210, 213, 216, 227-229, 233-235, 238-240, 243-250, 252-253, 255-263, 268, 417-423, 546-54.  His past medical history reveals high lead levels, the highest of which occurring between six months and 12 months of age. T. 232, 236.  In November 2010, plaintiff was treated at the Anthony Jordan Health Center for his ADHD diagnosis and prescribed Adderall. T. 551.

4

In a January 2011 psychiatric evaluation, Dr. Kavitha Finnity diagnosed plaintiff with ADHD and adjustment disorder with depressed mood. T. 566. Dr. Finnity opined that, among other things, plaintiff has difficulty following and completing age-appropriate directions and tasks; however, he: maintains appropriate social behavior; can respond to changes in the environment; and can learn in accordance with cognitive functioning. T. 566. Dr. Finnity opined that plaintiff's prognosis was fair to good. T. 566. In February 2011, state agency review physician Dr. Prowda opined that plaintiff had less than marked limitations in each functional domain assessed, except attending and completing tasks. T. 571-573. Dr. Prowda noted, however, that plaintiff was reportedly demonstrating dramatic improvement in that area when receiving medication. T. 571. Also in February 2011, plaintiff began attending treatment sessions at Genesee Mental Health, where he was frequently calm, cooperative, compliant, and able to remain seated, but sometimes restless. T. 622, 625, 633, 649, 650. During sessions when plaintiff had not taken his medication, he was hyperactive, impulsive, and outspoken with racing thoughts. T. 641, 645, 660.

On January 14, 2011, plaintiff's first grade teacher, during his repeat year, reported that he had a serious problem with reading and comprehending written material, providing oral explanations and descriptions, expressing ideas in written form,

learning new material, recalling and applying previously learned material, applying problem solving skills. T. 146.   Plaintiff "shut[] down if tasks [were] too difficult[;] he need[ed] support and reassurances of his abilities; and he [was] not always willing to challenge himself." T. 146.

His first grade teacher further observed that, since he began taking medication to treat his ADHD, his "attention and focus to detail" and "class discussions" have "improved dramatically." T. 147.   He followed "a classroom behavior system without difficulty," but he had trouble handling his frustration appropriately. T. 148-149.   Without his medication, however, plaintiff was "in constant motion." T. 151.   It was noted that plaintiff had more success in a smaller classroom, and that, over the course of the school year, plaintiff had become calmer and more attentive and confident. T. 406-407.

Prior to entering the second grade in the fall of 2011, an evaluation by the school district found that plaintiff had average cognitive ability and that he was ready to advance, but that he still needed extra support in some areas and with some tasks. T. 452-453.   His mother reported that his focus had improved while he was taking medication. T. 453.

A June 2011 IEP progress report reveals that plaintiff was progressing gradually toward some of his annual goals, but progressing satisfactorily or achieving others in various areas of

learning. T. 436-439.  A February 2, 2012 IEP progress report reveals that plaintiff was progressing satisfactorily toward his goals in all areas assessed, including reading, mathematics, and social, emotional, behavioral, and motor skills, and that he had also achieved several goals in those areas. T. 489-493.

### III. Hearing Evidence

Plaintiff, eight years old, testified at the hearing before the ALJ that he has trouble doing his school work because it is too "hard." T. 40.  He testified that he did not like taking his medication because it was "too nasty." T. 42.  His mother, Ms. Crawley, testified that plaintiff sees a counselor once a week and receives speech and occupational therapy. T. 45.  When plaintiff entered the first grade, Ms. Crawley began seeing signs of ADHD, including not focusing, "moving a lot," getting easily distracted, and failing behind in school. T. 45.  When he does not receive extra help with his school work, plaintiff gets "very frustrated" and "mad" at himself. T. 46.  Plaintiff struggles with reading, writing, and math. T. 47.  He also has trouble with his short-term memory. T. 51.  Ms. Crawley gets reports from plaintiff's school that he is having a rough day about twice a month. T. 48. Plaintiff currently takes a 15-milligram dose of Adderall daily. T. 49.

Plaintiff has to be given step-by-step instructions, sometimes repeatedly, when given a new task. T. 51. He also has difficulty

giving descriptions or explanations and has speech problems. T. 52-53. He gets bored in the middle of board games and sports, and he cannot follow multi-step directions. T. 54-55. Plaintiff is very impatient and becomes easily frustrated, and he constantly misplaces his belongings. T. 56-57. When confronted by his behavior, plaintiff becomes defensive, often crying, and will not take responsibility for his actions. T. 58. Getting up in the morning and going to school is a struggle for plaintiff. T. 59.

In plaintiff's disability report, Ms. Crawley noted that in the two weeks that plaintiff had been taking Adderall, his activity level had "really slowed," and he was less hyper, much calmer, and much less prone to tantrums. T. 137.

## IV.   The Commissioner's Decision Denying Plaintiff Benefits is Supported by Substantial Evidence.

Plaintiff contends that the ALJ's finding that plaintiff had less than marked limitations in the functional domains of acquiring and using information, interacting and relating to others and caring for self are not based on substantial evidence. Plaintiff's memorandum of law, 23-30.

An individual under the age of 18 is entitled to SSI benefits under the Social Security Act when he has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which have lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations set forth a three-step

sequential process for the ALJ to follow in evaluating SSI claims for minor children. See 20 C.F.R. § 416.924. The burden of proof rests on the claimant at each step of the analysis. *See Jonson v. Colvin*, 2013 WL 1314781, at *2 (W.D.Pa.2013).

A finding of disability is warranted if a "marked" limitation is found in any two of the six domains, or an "extreme" limitation in a single domain listed in 20 C.F.R. § 416.926a: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and, health and physical well-being. *see* 20 C.F.R. § 416.926a(b)(1)(i)-(vi); *Ramos v. Barnhart*, 2003 WL 21032012, at *8 (S.D.N.Y.2003). A "marked" limitation exists when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).

Here, the ALJ's decision throughly discusses the evidence pertaining to plaintiff's functional limitations due to ADHD in reaching the conclusion that the impairment did not meet, medically equal, or functionally equal Listing 112.11. The ALJ's detailed discussion of the medical evidence, educational records, and hearing testimony reveals substantial support for his assessment that plaintiff had marked limitations in only one domain of functioning: attending and completing tasks. Contrary to plaintiff's contention, the Court's review of the record reveals no

medical reports, treatment notes, or diagnostic test results to support findings of marked limitations in any of the three domains listed above.

In his decision, the ALJ found that there is a consistent indication in plaintiff's medical and educational records that his high levels of hyperactivity, inattention, and other behaviors associated with his ADHD diagnosis, which affect his ability to acquire and use information among other things, are greatly improved when he is taking medication. T. 23-26, 27. The ALJ noted that plaintiff's first grade teacher, Ms. George, who taught plaintiff both before and after he began the medication, observed a dramatic lessening of plaintiff's ADHD behaviors when he was medicated. T. 24. The ALJ's decision concludes that "[t]he documented education and medical records from 2011 make clear that [plaintiff's] condition is far less problematic so long as [he] is taking his prescribed medication. When doing so, the evidence illustrates that the claimant's ADHD symptoms are[,] at most, moderate in severity." T. 25. This Court's review of the record establishes that the ALJ's decision is supported by substantial evidence.

<u>**CONCLUSION**</u>

For the foregoing reasons the plaintiff's motion for judgment on the pleadings is denied, and defendant's cross-motion for judgment on the pleadings is granted. The complaint is dismissed

in its entirety with prejudice.   The ALJ's decision denying
plaintiff's claim for SSI is supported by the substantial evidence
in the record.

ALL OF THE ABOVE IS SO ORDERED.


                           S/ MICHAEL A. TELESCA
                    HONORABLE MICHAEL A. TELESCA
                    UNITED STATES DISTRICT JUDGE

DATED: Rochester, New York
       March 24, 2015